IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRANDON L. BAGGETT and
CHRISTINA M. BAGGETT,                                  Case No.

    Plaintiffs,

v.                                                                          JURY TRIAL DEMANDED

STONELEIGH RECOVERY ASSOCIATES, LLC,

    Defendant.
_____/

COMPLAINT FOR UNLAWFUL DEBT COLLECTION PRACTICES

I.    Introduction

1. This is an action for damages brought by an individual consumer for Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et. seq. (hereinafter "FDCPA") and the Florida Consumer Collection Practices Act, F.S.A. §§ 559.55-559.785 (hereinafter "FCCPA"). These laws prevent, respectively, debt collectors and persons from, *inter alia*, engaging in abusive, deceptive, and unfair collection practices.

II.    Jurisdiction and Venue

2. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 28 U.S.C. §§ 1331, 1337, and 1367.

3. Venue lies in this District pursuant to 28 U.S.C. § 1391(d).

III.    Parties

4. Plaintiff, Brandon L. Baggett (hereafter "Mr. Baggett"), is an individual who resides in Brandon, Florida, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) and

F.S.A. § 559.55(2), and is also a person with standing to bring a claim under the FDCPA by virtue of being directly affected by a violation of the Act.

5. Plaintiff, Christina M. Baggett (hereafter "Mrs. Baggett"), is an individual who resides in Brandon, Florida, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) and F.S.A. § 559.55(2), and is also a person with standing to bring a claim under the FDCPA by virtue of being directly affected by a violation of the Act.

6. Defendant, Stoneleigh Recovery Associates, LLC (hereinafter "SRA"), is a limited liability company, organized under the laws of the State of Illinois, with its principal place of business located at 810 Springer Drive, Lombard, Illinois, 60148.

7. Defendant SRA is a "debt collector," as that term is defined under 15 U.S.C. § 1692a(6) and F.S.A. § 559.55(6), as it regularly collects, or attempts to collect, debts alleged to be due to another.

8. Defendant SRA is also an "out-of-state consumer debt collector," as that term is defined by F.S.A. § 559.55(8), as its business activities in this state involve collecting and/or attempting to collect consumer debt from debtors located in this state by means of interstate communication originating from outside this state.

IV.   Factual Allegations

9. Defendant SRA attempting to collect a debt alleged to have originally been owed by Mr. Baggett to HSBC for a Best Buy credit card.

10. The Best Buy card was used for family or household purposes and is a consumer debt.

January 18, 2013 Phone Call

11. On or about January 18, 2013 a representative of SRA attempted to contact Mr. Baggett to collect the debt.

12. However, Mr. Baggett was not home and Mrs. Baggett answered the phone.

13. Mrs. Baggett told the representative that Mr. Baggett was not home and that she was his wife and asked if there was something she could help him with.

14. The representative told Mrs. Baggett that the account was in collection and that the full amount of the debt needed to be paid and that the total amount outstanding was approximately $1,600.00.

15. Mrs. Baggett told the representative that Mr. Baggett was the only one working in the household and that she was disabled. She further told the representative that they have young children and that there was no way that they could pay $1,600.00 on the account.

16. Mrs. Baggett offered to pay $800.00 as full settlement of the account and she told the representative that she would have to borrow the money from one of her credit cards to get the $800.00.

17. The representative refused the offer and said that his client would get the full amount owed in the end, that a Judge will make them pay the debt even if it means taking it out of Mr. Baggett's paycheck.

18. The representative went on to state that failure to settle the debt now would only cost Plaintiffs more money in additional interest and fees.

19. Mrs. Baggett again told the representative that they could not afford to pay the entire balance.

20. The representative then asked to speak to Mr. Baggett again and Mrs. Baggett told the representative that he was at work and that he was not allowed to get calls at work. She then told the representative that Mr. Baggett gets out of work at 5:00 p.m. and that they could reach him at home after that time.

January 21, 2013 Phone Calls

21. On or about January 21, 2013 another representative of SRA called asking to speak to Mr. Baggett.

22. Once again, Mrs. Baggett told the representative that her husband was not home, was at work and that she is his wife.

23. The representative told Mrs. Baggett that the lowest he could accept was $1,450.00 to settle the account in full.

24. Mrs. Baggett told the representative that they could not afford that much money and then said that the most she could get from her credit card was $1,000.00 and she offered to pay that amount.

25. Mrs. Baggett went on to state that she and her husband really wanted to work something out to avoid having Mr. Baggett's wages garnished as the previous representative had threatened.  She asked that the representative work with her.

26. The representative told Mrs. Baggett that he did not have to work with them because his client would rather garnish Mr. Baggett's paycheck than settle the account for such a small amount of money.

27. During the phone call the representative's tone became aggressive and caused Mrs. Baggett to feel tense and anxious.

28. Mrs. Baggett suffers from severe anxiety and panic attacks which is the basis of her being disabled and unable to work.

29. During this phone call, Mrs. Baggett was with her children and felt herself slipping into a panic attack due to the fear of having her husband's wages garnished and she feared that they would not be able to take care of their children.

30. Due to her feeling of panic and anxiety, she knew that she had to end the phone call so she told the representative that $1,000.00 was the best that they could do.

31. The representative said he would not accept that and that he would do what he had to do and he ended the call.

32. Later that day, January 21, 2013, the representative called again and asked for Mrs. Baggett.

33. The representative told Mrs. Baggett that he had called his client and his client had declined to accept the $1,000.00 and that they would pursue the claim in court instead. He said he was giving her one more chance to pay the $1,450.00.

34. Mrs. Baggett told the representative that they didn't have $1,450.00 and that they just couldn't do it.

35. The representative asked to speak to Mr. Baggett. Mrs. Baggett told him that Mr. Baggett was at work and told him that he was not allowed to be contacted at work.

### January 22, 2013 Phone Call to the Plaintiffs' Residence

36. On or about January 22, 2013 at approximately 5:13 p.m. a representative from Defendant SRA called and asked for Mr. Baggett.

37. Mrs. Baggett said he was not home and the representative asked if this was his wife.

38. Mrs. Baggett said it was and the representative said that this was their "last chance" to pay the $1,450.00 or else they would pursue legal action.

39. Mrs. Baggett told the representative that she could not pay $1,450.00.

40. The representative asked again to speak to Mr. Baggett and Mrs. Baggett told him that he was at work and for the third time told him that Mr. Baggett was not allowed to be contacted at work.

41. The representative said "this is your last chance;" Mrs. Baggett said she couldn't pay that much money and the call ended.

### January 22, 2013 Phone Call to Mr. Baggett's Place of Employment

42. On January 22, 2013 at approximately 5:30 p.m. a representative called Mr. Baggett's place of employment and asked to speak to Mr. Baggett.

43. One of Mr. Baggett's co-workers answered the phone and told the representative that Mr. Baggett had already left for the day and, thinking it was a customer, the co-worker asked if there was something he could help with.

44. The representative told the co-worker that he was with a recovery agency and that he needed to speak to Mr. Baggett.

45. The representative gave the co-worker his name and phone number and asked that the co-worker have Mr. Baggett call him back.

### January 30, 2013 Phone Conversation

46. On January 30, 2013, Mrs. Baggett called Defendant SRA to see if they were still collecting on the alleged debt.

47. The representative told her the debt was still in their office and that they had sent out a letter on January 24, 2013.

48. Mrs. Baggett told the representative that she did not get the letter and asked him what address they sent the letter to.

49. When the representative told Mrs. Baggett the address they used, she realized that it was her mother's address which is no longer a valid address for Mrs. Baggett.

50. Mrs. Baggett told the representative that they had the wrong address and asked that he update it to the correct one.

51. The representative yelled at her and became very aggressive, and told her that it didn't matter what address they used because they do not want to be her "pen pal."

52. The representative then asked if she was going to pay $1,400.00 because that was the last day he could accept that amount for settlement.

53. He told Mrs. Baggett that if she did not pay that day, they would consider the debt uncollectible and file suit for the entire amount of the debt plus additional fees.

54. Mrs. Baggett refused to pay and ended the phone call.

55. Upon information and belief, to date, no lawsuit has been filed against either of the Plaintiffs for the consumer debt that the Defendant was attempting to collect.

## V.     Claims for Relief

-Count I-
Violation(s) of the Federal Fair Debt Collection Practices Act

Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 55.

56. The foregoing acts and omissions of Defendant and its employees/agents constitute numerous and several violations of the FDCPA, including, but not limited to, 15 U.S.C. §§ 1692b(2), 1692c(a)(3), 1692c(b), 1692d generally, 1692e generally, 1692e(4), 1692e(5), 1692e(10), and 1692f generally.

57. As a result of the above violations of the FDCPA, Plaintiff is entitled to recover actual damages, statutory damages, and reasonable attorney's fees and costs.

-Count II-
Violation(s) of the Florida Consumer Collection Practices Act

Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1 through 55.

58. The foregoing acts and omissions of Defendant and its employees/agents constitute violation(s) of the FCCPA, including, but not limited to, Fla. Stat. §§ 559.72(4), 559.72(7), and 559.72(9).

59. As a result of the above violations of the FCCPA, Plaintiffs are entitled to a declaratory judgment that Defendant's conduct violated the FDCPA and FCCPA, and is entitled to recover actual, statutory, and punitive damages, and reasonable attorney's fees and costs.

**VI.   Prayer for Relief**

WHEREFORE, Plaintiffs pray that this Honorable Court enter judgment against Defendant for the following:

    a.   Declaratory Judgment that Defendant's acts constituted violations of the FDCPA and FCCPA, pursuant to Fla. Stat. § 559.77(2);

    b.   Actual and Statutory damages, pursuant to 15 U.S.C. §§ 1692k(a)(1), 1692k(a)(2)(A) and Fla. Stat. § 559.77(2);

    c.   Punitive Damages, pursuant to Fla. Stat. § 559.77(2);

    d.   Costs and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(3) and Fla. Stat. § 559.77(2); and

    e.   Such other and further relief that this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury in this action.

                                                      Respectfully submitted,

                                                     /s/ Joseph B. Battaglia
                                                   Joseph B. Battaglia, Esquire
                                                   Fla. Bar No.: 0137080
                                                   THE GOLDEN LAW GROUP
                                                   808 Oakfield Drive, Suite A
                                                   Brandon, Florida 33511
                                                   Telephone: (813) 413-8700
                                                   Facsimile: (813) 413-8701
                                                   joe@brandonlawyer.com